[No. 4218.   Decided September 15, 1902.]

LOST LAKE LUMBER COMPANY, *Appellant,* v. GEORGE W. SMITH, *Respondent.*

TRIAL — ADMISSIBILITY OF DEFENDANT'S EVIDENCE ON PLAINTIFF'S CASE IN CHIEF.

In an action for damages for breach of contract to furnish logs, in which an issue had been raised of a modification of the contract, the action of the court in admitting in evidence certain letters tending to establish defendant's affirmative defense, upon the cross-examination by defendant of plaintiff's witness, was not erroneous, when the correspondence between the parties had been introducd by plaintiff to show the course of dealing between them, and these letters presented by defendant had been offered as part of the same correspondence.

SAME — NONSUIT — RELEVANCY OF EVIDENCE FOR MORE THAN ONE PURPOSE — WRITTEN INSTRUMENTS — CONSTRUCTION BY COURT.

In such case, upon defendant's motion for a nonsuit at the close of plaintiff's evidence, the court was entitled to consider such letters for the purpose of determining whether the contract had been in fact modified, since such letters, being properly in evidence for one purpose, were material and relevant for whatever they contained, and their construction and effect devolved upon the court instead of raising a question for the jury.

Appeal from Superior Court, Klickitat County.—Hon. ABRAHAM L. MILLER, Judge.   Affirmed.

*A. R. Byrkett* and *W. B. Presby,* for appellant.

*N. B. Brooks, A. A. Jayne,* and *Bennett Sinnott,* for respondent.

The opinion of the court was delivered by

REAVIS, C. J.—Action to recover damages for breach of contract to furnish logs.   The substantial allegations of the complaint deemed material for the consideration of the cause here are as follows:   That on the 4th of August,

1899, plaintiff and one Hayes entered into a contract according to the terms of which Hayes was to cut and put into the Klickitat river in Klickitat county one million feet of good, sound, yellow pine saw logs, to be cut from timber then belonging to Hayes, and to drive said logs down the Klickitat river, and deliver them at its mouth in the Columbia river to plaintiff. The logs were to be delivered by the first day of December, 1899. The logs should be scaled and accepted by the plaintiff, and any not accepted were to be culled out before scaling. They were to be free from all incumbrances and liens. In consideration of the delivery of the logs the plaintiff was to pay $4.00 per thousand feet, board measure; $2.00 per thousand on the 15th day of each month for all logs put into the Klickitat river during the preceding month, the remaining $2.00 to be paid as needed after the logs were delivered. The scaling was to be done by a competent person in the employ of plaintiff, and Hayes was to pay one-half the expense of scaling. Hayes had delivered several hundred thousand feet, board measure, to plaintiff, and had cut, and had on the way to the Klickitat, large quantities of logs, approximating the amount to be delivered under the agreement. Plaintiff, between December 1, 1899, and March 17, 1900, had advanced money to Hayes on account of said contract in the sum of $1,571.16. That Hayes, at said last date, transferred in part to the defendant, Smith, herein, his claim and obligation under the contract, and also all the logs which had been cut. That on the 17th day of March, 1900, the following agreement was entered into between plaintiff and Hayes and defendant, Smith:

"The undersigned, G. W. Smith, E. Hayes and the Lost Lake Lumber Company hereby agree as follows: G. W. Smith, of Grand Dalles, Klickitat county, state of

Washington, agrees to assume that part of the contract of E. Hayes made with the Lost Lake Lumber Company on the 4th day of August, A. D. 1899, in as far as it relates to putting logs into the Klickitat river in Klickitat county, Washington, and agrees to deliver said logs to Lost Lake Lumber Company in the said Klickitat river free and clear of all incumbrances. The said E. Hayes agrees to turn over that part of the above mentioned contract as far as it relates to putting in said logs into the said Klickitat river to the said G. W. Smith, and give him full control of the same.

"The Lost Lake Lumber Company agrees to pay the said G. W. Smith the sum of two dollars and sixty cents ($2.60) per thousand feet for said logs delivered into said Klickitat river instead of the two dollars ($2) as agreed upon in the above mentioned contract made with E. Hayes on August 4, 1899, and to pay the same on the fifteenth (15th) day of each month for logs that have been put in and scaled during the preceding month.

"E. Hayes further agrees to give the said Lost Lake Lumber Company full charge and control of that part of the above mentioned contract that relates to the driving of said logs out of said Klickitat river into the Columbia river, and is to give them all the assistance in such driving as he can, that they may desire.

"The said Lost Lake Lumber Company agrees to dictate and control the driving of said logs out of the said Klickitat river into the Columbia river, and after the said logs are all driven out of the said Klickitat river into the Columbia river and the contract is fully completed, if the cost of doing so is less than one dollar and ninety cents ($1.90) per thousand feet the said E. Hayes is to be paid any difference there may be.

"It is also mutually agreed by all parties to this agreement that the amount of logs to be put into the said Klickitat river shall be limited to two million (2,000,000) feet instead of one million feet (1,000,000) as stated in above mentioned contract, and the time for putting the said logs into said Klickitat river to be extended to June 15, 1900.

"It is further understood that the said G. W. Smith is

privileged to sub-contract any portion of his part of this contract to be performed.

"It is also further agreed that the amount of $1,571.16 as charged the said E. Hayes on Lost Lake Lumber Company's books is to be accepted by the said G. W. Smith to apply on logs that have been put in under the contract above mentioned and that will be put in under this agreement.

"In witness whereof the said parties have hereunto, and to two others of like nature, set their hands and seals this 17th day of March, A. D. 1900."

It is further alleged that defendant, Smith, took the logs and outfit of Hayes, and assumed the obligation and liability under said contract; and the material failure of Smith to perform is alleged as follows:

"That the said defendant has neglected, failed and refused to perform said contract in this: (a) That the said defendant has not delivered two million feet of good, sound, smooth, straight, number one, yellow pine saw logs, or any part thereof in the Klickitat river, or delivered any logs in the said Klickitat river free and clear of all incumbrances, as provided for therein, before the 15th day of June, 1900, or at any time thereafter or at all, or delivered any logs except ninety thousand feet, board measure, placed in said river by E. Hayes and two hundred and four thousand six hundred and eighty-nine feet of logs, board measure, banked on said river by said E. Hayes and put in said river by said defendant, all of which logs so delivered were incumbered by liens and charges of record and otherwise."

Damages are demanded by plaintiff against defendant, Smith, in the sum of $11,613.37. The answer denies knowledge of the advancement of the sum of $1,571.16 as mentioned above; denies that defendant neglected or refused to perform his contract, or any contract, with plaintiff; and denies that he has failed to deliver any logs required by his contract or any contract; and alleges that he

has delivered and offered to deliver to plaintiff about
1,400,000 feet, board measure, in logs; and denies gener-
ally any breach of contract. The answer also admits the
execution of the written agreements as set out in the com-
plaint, and for affirmative defense alleges that the contract
made June 17, 1900, was so modified and changed that
only such logs as were then cut and available to the amount
of 1,000,000 feet, board measure, more or less, was to be
put into the Klickitat river, and that defendant had deliv-
ered about this amount when plaintiff refused to receive
the logs, though said logs had been previously scaled and
accepted by plaintiff; and defendant demands damages by
way of counterclaim for plaintiff's breach of the modified
and existing contract. Plaintiff replied, denying the af-
firmative allegations of the answer, and denying any modi-
fication of the contract set forth in the complaint executed
on the 17th of June, 1900.

Upon these issues the parties went to trial. During the
introduction of evidence by plaintiff the proof of the modi-
fication of the contract as alleged by the defendant was
admitted in the form of the following correspondence:

"Defendant's Exhibit 'A.'

The Dalles, Oregon, June 22, 1900.

Lost Lake Lumber Co.,
    Hood River, Oregon.

Gentlemen: In answer to your letter of yesterday, en-
closing additional copy of your proposed addition to our
agreement, I have carefully considered the matter, with
the result that I have found it impossible to sign your pro-
posed additional agreement.

I cannot sign it, first because it would be impossible for
me to put *all* the logs cut in the river within thirty (30)
days. Many of them, by agreement with your scaler, were
rejected and left in the woods where cut; and some in the
lower camp, though near the river, are lying in rocky and

inaccessible places, and I may not be able to get them all into the river. These facts are well known to your Mr. Gray. Second, I cannot agree to extend the time of payment until the logs are floating in the Columbia river.

'I am willing to agree to put all the logs that are available, 1,000,000 feet, more or less, into the Klickitat river within 35 days from the date of this letter; the logs to be paid for when they float into the Columbia river, and in any event all logs received by you in the Klickitat are to be paid for within one year from this date, at price mentioned in original agreement.'

The above proposition to put the logs in within 35 days is, of course, on the understanding that you accept it at once. I will require 35 days from the date of your acceptance. Please mail answer to Glenwood, Wash.

Very truly yours,                    G. W. SMITH."

"Defendant's Exhibit 'H.'

Hood River, Oregon, June 23, 1900.

Mr. G. W. Smith,
Glenwood, Wash.

Dear Sir: Yours of the 22nd inst., received.

We accept your proposition therein contained, towit: 'I agree to put all the logs that are available, one million feet, more or less, into the Klickitat river within thirty-five days from the date of this letter. The logs to be paid for when they float into the Columbia river, and in any event all logs received by you in the Klickitat river are to be paid for within one year from this date at price mentioned in original agreement.' Yours truly,

LOST LAKE LUMBER CO.,

By P. S. DAVIDSON, JR., Sec.

P. S. Available logs to be such as are accepted by the scaler. Such logs as are now lodged in the rocks and are impracticable to move to the river will not be required.

LOST LAKE LUMBER CO."

When plaintiff had concluded the introduction of its evidence in chief, counsel for defendant moved for a nonsuit as to plaintiff's first cause of action,—that is, for damages for breach of the contract to deliver logs,—on the

ground that no such breach was alleged in the complaint, and no proof of such breach was shown in the evidence. The court granted the motion, and the trial then proceeded upon the claim stated by plaintiff for moneys advanced upon logs delivered by Hayes, and upon the counterclaim stated in the answer. The jury returned a verdict in favor of defendant for $457.77 upon the counterclaim, and returned a finding that the contract price of logs delivered by Hayes exceeded the sum of $1,571.16, claimed to have been advanced by plaintiff. The record is a long one, and arranged in disorder, and without indexing; but so much of the evidence has been examined as is necessary to determine its sufficiency upon the motion to dismiss the plaintiff's first cause of action for breach of the contract set out in the complaint. The motion was based upon the ground that the contract sued upon was not the contract proved; that there was a total failure of proof showing any breach of the existing contract by defendant. The correspondence, defendant's Exhibits A and H, was introduced upon cross-examination of plaintiff's witness, and over the objection of plaintiff.

1. The first error assigned is upon plaintiff's objection to the introduction of these exhibits. The exhibits were letters showing the modification of the contract as alleged in the answer. Plaintiff had introduced a number of letters between the parties, which an officer of the plaintiff had identified and testified to as showing a course of dealing between the parties. Counsel for defendant had the witness identify the two exhibits, and then offered them in evidence as pertinent as a part of the correspondence between the parties, and insisted that the whole correspondence should be admitted. It is true, as urged by counsel for plaintiff, that the letters could not be received merely for the purpose of proving the affirmative defense

in the answer, but they seem relevant as part of the correspondence. And, if pertinent for that purpose, they might also be considered for the other purpose,—the modification of the contract set out in the answer. But it seems in no view did their premature introduction at that time result in injury to plaintiff. The controlling question is the ruling of the court upon the effect of this evidence of the modification of the contract. The contention of plaintiff's counsel is thus stated:

"We insist that, the existence of any modified agreement being squarely denied in the reply, in the absence of any express agreement in writing or an averment in the answer that the alleged modification was accepted by the parties thereto as a full accord and satisfaction, is a question for the jury."

The letters are clear and definite. In the course of the correspondence a proposal was finally made by one and definitely accepted by the other. The construction and effect of this written evidence devolved upon the court. There was no disputed fact to be submitted to the jury. *Hutchison v. Bowker,* 5 Mees. & W. 535; *Rogers v. Colt,* 21 N. J. Law, 704. The case, after the dismissal of the plaintiff's first cause, was submitted to the jury upon the issues of the moneys advanced by plaintiff and the claim for damages made by defendant in his counterclaim. It is apparent that the cause of action stated in the complaint which was dismissed was not sustained by the proof. There was not, in this instance, a departure in the evidence, but a failure of the whole scope of the proof. It is not suggested there was any surprise, because the answer set out specifically the modified existing contract. The plaintiff replied, denying the modification, thus putting in issue the existence of the modified contract. The modified contract, which was then the only existing one, was proved in

the admission of the plaintiff's testimony; and the ruling out of this cause of action was justified when the motion was made, and is sustained by the whole evidence in the case at the conclusion of the trial.

The judgment is affirmed.

DUNBAR, WHITE, ANDERS, HADLEY, FULLERTON and MOUNT, JJ., concur.